**FILED**

**November 27, 2018**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 1:18 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Terrance Garcia Glenn, | ) | Docket No. 2017-06-0584 |
| Employee, | ) | |
| v. | ) | |
| Sears Outlet Store, LLC, | ) | State File No. 48175-2016 |
| Employer, | ) | |
| And | ) | |
| Ace American Ins. Co., | ) | Judge Kenneth M. Switzer |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL AND
## TEMPORARY DISABILITY BENEFITS

Terrance Garcia Glenn requested medical and temporary disability benefits for alleged work injuries to his back and neck.[1] Sears Outlet Store asserted he did not provide timely notice and his injuries did not arise primarily out of and in the course and scope of employment. The Court held an expedited hearing on November 20, 2018, and concludes that Mr. Glenn presented sufficient evidence that he would likely prevail at a hearing on the merits for the requested benefits.

### History of Claim

Mr. Glenn worked for Sears selling appliances. He testified that late in the morning of May 4, 2016, he sold a commercial refrigerator weighing approximately 400 pounds.[2] About two hours later, Mr. Glenn learned that the refrigerator was moved to the

---

[1] Mr. Glenn also mentioned injuries to his wrist and hips, as well as emotional distress, but the medical records do not document these injuries, and the Court will not consider them at this time.

[2] The Dispute Certification Notice lists May 2, 2016, as the date of injury, while the Petition for Benefit determination lists the date of injury as both May 2 and May 4. Mr. Glenn testified that he did not complete the Petition for Benefit Determination but rather an ombudsman with the Bureau of Workers' Compensation wrote the information because he was heavily medicated at the time. The document states on the last page that a Bureau ombudsman completed the form and it was witnessed by another Bureau

loading dock but not loaded onto the customer's vehicle, and the customer threatened to cancel the sale if it were not loaded within ten minutes. Anxious to close the sale, Mr. Glenn attempted to move the refrigerator, which had been placed on wheels. It stopped suddenly when it made contact with a trash pile on the floor; the refrigerator fell backward and struck Mr. Glenn on the top of his head, injuring his head and neck.

Concerning notice, Mr. Glenn testified that immediately after the accident, he told the assistant store manager, Angie Harris, he was hurt and she needed to complete an accident report. According to him, she refused. On cross-examination, he said he gave verbal notice to Ms. Harris and "Miss Amy," a co-worker. Mr. Glenn acknowledged he never gave written notice.

For her part, Ms. Harris testified that she was not present when the accident occurred. She said if Mr. Glenn suffered an injury at work, he was to report it to her and the manager on duty. Ms. Harris said Mr. Glenn never reported an injury to her, but on June 15, he sent her a text saying he "hurt himself; look at the cameras." She did not say whether she or anyone else at Sears checked the surveillance cameras after she received the text. On cross-examination, she could not recall after the accident helping to move the refrigerator while Mr. Glenn allegedly told her his neck hurt. Ms. Harris did not testify about how Sears' lack of knowledge regarding the alleged injury prejudiced its efforts to investigate the claim.[3]

As for his medical treatment, Mr. Glenn testified that he went to the emergency room the day after the accident for the neck injury, but he did not introduce these records. Ultimately, Sears offered a panel, and Mr. Glenn chose Dr. James Fish.

The incomplete medical records document a visit in November 2017 that lists Sears' third-party administrator, Sedgwick CMS, as the carrier. Dr. Fish diagnosed lumbar spondylosis, lumbrosacral radiculitis, low-back pain, displacement of lumbar intervertebral disc without myelopathy, spinal stenosis in the cervical region, cervical spondylosis and neck pain. He referred Mr. Glenn to pain management; there is no evidence that Sears offered a panel of pain management specialists. Rather, it sent Dr. Fish a letter in January 2018 asking if Mr. Glenn's condition casually related to his employment. Dr. Fish responded "TBD," which the Court interprets as "to be determined."

---

employee. The Court notes that dates on state-created documents are controlled by the date identified in the first report of injury, presumably filed by Sears. If that document gave May 2 as the date of injury, then all following state file documents would contain that date despite what Mr. Glenn contends. The Court finds, based on Mr. Glenn's testimony, that the date of injury is May 4, 2016.

[3] Mr. Glenn offered extensive testimony without objection regarding disagreements between him and his co-workers, which apparently culminated with him filing charges against Sears with the EEOC sometime before the alleged date of injury. However, this testimony is not relevant to the disputed issues, and the Court declines to recount it.

Dr. Fish completed an April 2, 2018 "Work Status Report" taking Mr. Glenn off work for one month. Dr. Fish prepared a later, undated note, stating, "Patient sustained work related injuries to his cervical and lumbar spine. He is still under my care for those issues." Then, at an August 8 office visit, Dr. Fish wrote:

> Patient has relayed to me throughout the course of our care for him that all of his neck and back issues stem from the work injury in May of 2016. He had 2 significant disc herniations with cervical radiculopathy which necessitated surgical intervention. It is very feasible that a refrigerator falling on an individual directly on the head could result in disc herniations. Patient also has a disc herniation at L5-S1 and his lumbar spine[,] which again could be due to a fall such as the one he describes. If there is no history of neck or back treatment prior [to] 2016 that [sic] I would have the opinion that the work related injury caused his cervical and lumbar issues.

(Ex. 2 at 13.) Dr. Fish also noted the following history:

> He relays to me that on May 4, 2016 he was helping to move a commercial grade refrigerator when the dolly slipped and the refrigerator fell back on top of him hitting his head and neck, driving his body to the floor. He has since then had significant neck pain and low back pain. . . . [H]e denies a history of neck or back pain prior to the work related injury in 2016.

*Id.* at 14.

Dr. Fish again referred Mr. Glenn to pain management and for an evaluation and treatment with Dr. John Schneider. Dr. Fish did not mention restrictions or excusing him from work at that visit. The notes list the insurer as "BCBS Network P." Mr. Glenn testified that this insurance is through his wife's employment. Mr. Glenn further testified that he receives treatment at a Brentwood pain management clinic, but he was unable to recall the physician's name. An appointment notice in the medical records suggests that he sees Dr. Schneider.

Mr. Glenn acknowledged a physical altercation with a co-worker that happened before the alleged date of injury sometime in 2015, but Mr. Glenn said he did not seriously injure his neck in the encounter. On cross-examination, he agreed he was in a car accident in 2005 or 2006 and that he saw providers since approximately 2006 for his back, neck and other body parts. Mr. Glenn explained they treated "spasms" relating to muscular pain, while Dr. Fish treated fractures to bones in his neck and back. Although Sears questioned Mr. Glenn about these events and asked that he read aloud from some of the records, Sears did not introduce copies of the treatment notes into evidence. Neither

3

party introduced evidence of presentation of these records to Dr. Fish with questions about how this might affect his previous opinions.

Throughout the authorized treatment, the Court held a series of status conferences. At a May 7 conference, Sears' counsel stated that it continues to pay for treatment with Dr. Fish. Similarly, at an August 13 hearing, Sears' counsel repeated that it paid for treatment with Dr. Fish. However, at a November 1 pretrial hearing, Sears clarified that it paid for "one or two" consultations with Dr. Fish. Sears never filed a notice of controversy or wage statement.

Mr. Glenn requested that Sears reimburse his personal insurer for the visits it covered and that Sears provide authorized treatment with Dr. Schneider. He additionally seeks temporary total disability benefits from the date of injury through the present and until he reaches maximum medical improvement.

Sears countered that Mr. Glenn gave varying dates of injury and did not give timely notice. As a result, it suffered prejudice. Further, Sears argued that Mr. Glenn's preexisting conditions or possibly the previous car accident are greater than fifty percent responsible for his need for treatment. Moreover, Dr. Fish's causation opinion is premised on Mr. Glenn receiving no prior back and neck treatment. However, Mr. Glenn acknowledged previous treatment.

**Findings of Fact and Conclusions of Law**

Mr. Glenn must present sufficient evidence that he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1).

First, regarding Sears' notice defense, Tennessee Code Annotated section 50-6-201(a)(1) (2015) provides in relevant part that an injured employee must give written notice of an injury within thirty days unless it can be shown that the employer had actual knowledge of the accident. When the employer raises lack of notice as a defense, the burden is on the employee to show either the employer had actual notice, that he provided notice, or that his failure to give notice was reasonable under the circumstances. *Hosford v. Red Rover Preschool*, 2014 TN Wrk. Comp. App. Bd. LEXIS 1, at *15 (Oct. 2, 2014). The notice requirement "exists so that an employer will have an opportunity to make a timely investigation of the facts while still readily accessible, and to enable the employer to provide timely and proper treatment for an injured employee." *Id.*

Mr. Glenn acknowledged that he never gave written notice. Rather, he testified that he told Ms. Harris after the accident, in "Miss Amy's" presence, that he hurt his back and neck and she needed to complete an accident report. In contrast, Ms. Harris testified that he never gave her notice, but later said he texted her on June 15 to say he "hurt himself; look at the cameras." The Court credits Mr. Glenn's testimony over hers on this

4

point. Overall, he described the day's events in great detail, and the Court finds his account of giving notice the more credible version. The Court holds Sears had actual notice of the accident immediately after it happened.

Sears asserted that it was prejudiced by Mr. Glenn's purported delay in reporting the injury. Specifically, it argued it could have reviewed videotape of the premises, but this video has since been recorded over. The Court is not persuaded. Importantly, Sears offered no evidence regarding its use of worksite cameras or of any prejudice it suffered as a result of the alleged delay; it merely argued this is so. Further, the Court need not consider any alleged prejudice to the employer, because under Tennessee Code Annotated section 50-6-201(a)(3), this is a consideration only after determining a "defect or inaccuracy in the notice." Here, the Court ruled that Sears had actual notice.

Turning next to causation, the Court must determine whether Mr. Glenn suffered an injury as that term is defined in the Workers' Compensation Law. Specifically, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14). This must be shown "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B)-(C). An injury is shown to a reasonable degree of medical certainty if "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D). Further, the Appeals Board explained:

> A physician may render an opinion that meets the legal standard espoused in section 50-6-102(14) without couching the opinion in a rigid recitation of the statutory definition. What *is* necessary, however, is sufficient proof from which the trial court can conclude that the statutory requirements of an injury as defined in section 50-6-102(14) are satisfied.

*Panzarella v. Amazon.com, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14 (May 15, 2017) (emphasis in original).

In this case, Dr. Fish wrote in the undated note that Mr. Glenn "sustained work related injuries to his cervical and lumbar spine." He offered a similar opinion in the August treatment notes, stating it is "very feasible that a refrigerator falling on an individual directly on the head could result in disc herniations," and that the disc herniations "could be due to a fall such as the one he describes." Dr. Fish qualified that opinion by stating, "If there is no history of neck or back treatment prior [to] 2016 that [sic] I would have the opinion that the work related injury caused his cervical and lumbar issues." These notes also contain a description of the mechanism of injury that resembles Mr. Glenn's testimony at the hearing. Mr. Glenn denied a history of neck or back pain before the work injury in May 2016. Although Dr. Fish did not use terminology in the

5

statute, considering *Panzarella,* the Court holds that his opinion nonetheless suffices as proof that Mr. Glenn is likely to prevail in establishing he suffered an injury as defined within the Workers' Compensation Law.

Sears argued that Mr. Glenn has a lengthy history of pre-injury back problems and that he injured his back in a car accident. Because Dr. Fish's opinion is premised on Mr. Glenn having "no history of neck or back treatment," Sears argued the Court should disregard his opinion.

The Court disagrees. Sears did not introduce the records from the previous treatment into evidence, so the Court cannot consider them in their entirety. In addition, the Court finds plausible Mr. Glenn's explanation that the previous problems were muscular rather than skeletal. Further, Sears had months to directly inquire of Dr. Fish about this issue and failed to do so.

In light of this ruling, Sears must provide free of charge to Mr. Glenn medical treatment made reasonably necessary by the accident. Tenn. Code Ann. § 50-6-204(a)(1)(A). Sears must authorize and pay for treatment with Dr. Schneider.

Looking back, Sears' compliance with the statutory mandate so far is concerning. Specifically, the November 21, 2017 treatment notes refer Mr. Glenn to pain management, but Sears offered no evidence on its response to this referral. Dr. Fish referred Mr. Glenn to Dr. Schneider on August 8. Mr. Glenn sees Dr. Schneider using his wife's insurance. Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii) provides that when necessary a treating physician "shall make referrals to a specialist physician."

It appears to the Court that Sears ignored these referrals and its legal duty to honor them for approximately one year. In addition, Sears' Counsel represented to this Court in May and August that it paid for treatment with Dr. Fish. The Court finds that Sears did not pay for the August visit, nor did it file a Notice of Controversy. It was not until earlier this month that Sears' counsel informed the Court that it authorized the initial appointments but then stopped paying for Mr. Glenn's treatment. Sears gave neither him nor this Court notice of that decision by filing the required form.

Tennessee Code Annotated Section 50-6-128 addresses these situations as follows:

If any employer knowingly, willfully, and intentionally causes a medical or wage loss claim to be paid under health or sickness or accident insurance, or fails to provide reasonable and necessary medical treatment, including a failure to reimburse when the employer knew that the claim arose out of a compensable work-related injury and should have been submitted under its workers' compensation insurance coverage, then a civil penalty of five hundred dollars ($500.00) shall be assessed against the employer[.]

*See also* Tenn. Comp. R. & Regs. 0800-02-14-.03(1) (August, 2018). In addition:

> An adjusting entity electing to controvert its liability and terminate the payment of compensation benefits after temporary disability and/or medical benefits have been paid in a claim, shall submit a Notice of Controversy to the Bureau within fifteen (15) calendar days of the due date of the first omitted payment.

Tenn. Comp. R. & Regs. 0800-02-14-.04(8) (August, 2018).

The Court holds that Sears failed to provide reasonable and necessary treatment, caused the claim to be paid under Mr. Glenn's health insurance, and failed to file a Notice of Controversy. The Court refers this case for consideration of imposition of a penalty with the Compliance Unit.

Finally, Mr. Glenn seeks temporary disability benefits. To establish his entitlement to these benefits, he must show he (1) became disabled from working due to a compensable injury, (2) a causal connection between the injury and his inability to work, and (3) the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015).

Applying these criteria, Mr. Glenn established he became disabled due to a work injury and that a causal connection exists between his work at Sears and his inability to work. Dr. Fish offered this opinion in his undated note, and he restated it in the August medical records. Dr. Fish took him off work for one month on April 2. Thus, Mr. Glenn's duration of disability is April 2 through May 2. The Court is unable to calculate the sum owed due to Sears' failure to file a wage statement.[4] Once that occurs, the Court will order immediate payment. The Court cannot infer from the evidence that Dr. Fish would have totally restricted Mr. Glenn from working during any other times. However, Mr. Glenn may present evidence at a trial on the merits regarding any further entitlement to temporary disability benefits.

---

[4] The Claims Handling Standards in effect at the time of Mr. Glenn's alleged injury and shortly afterward require that Sears file a wage statement contemporaneous to filing a Notice of First Payment of Compensation or a Notice of Denial. Tenn. Comp. R. & Regs. 0800-2-14-.03(3) (October, 1999).

**IT IS, THEREFORE, ORDERED** as follows:

1. Sears shall provide treatment with Dr. Schneider as the authorized physician under Tennessee Code Annotated section 50-6-204(a)(1)(A).

2. Sears shall file a wage statement within **ten calendar days** of entry of this order so the Court may calculate the correct average weekly wage and compensation rate and issue an order for temporary disability benefits.

3. The case is referred to the Compliance Unit for consideration of penalties against Sears.

4. This case is set for a Status Hearing on **February 11, 2019, at 8:45 a.m. Central time**. The parties must call 615-532-9552 or toll-free 866-942-0025 to participate.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov

**ENTERED November 27, 2018.**

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

8

# APPENDIX

Exhibits:
1. Affidavits
2. Medical records
3. Medical bills (identification only)

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing, August 10, 2017
4. Employee's Position Statement, August 10, 2017
5. Email confirming settlement and cancellation of expedited hearing, September 26, 2017
6. Email regarding Choice of Physicians and scheduling, October 5, 2017
7. Order on Status Conference, November 21, 2017
8. Motion for Release of Funds
9. Employer's Response to Motion for Release of Funds
10. Agreed Order on Discovery
11. Order Resetting Status Conference
12. Show-Cause Order
13. Employer's response to Court's Show Cause Order
14. Notice of Filing, April 2, 2018
15. Order Resetting Status Conference
16. Email exchange between the parties, May 7, 2018
17. Notice of Filing, May 7, 2018
18. Order Resetting Status Conference, May 7, 2018
19. Order Resetting Status Conference, July 2, 2018
20. Order Granting Motion to Withdraw
21. Order on Status Conference, August 14, 2018
22. Request for Expedited Hearing, August 31, 2018
23. Order on Pretrial Conference, November 1, 2018

# CERTIFICATE OF SERVICE

I certify that a copy of this Expedited Hearing Order was sent to these recipients by the following methods of service on November 27, 2018.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Terrance Glenn, Self-represented employee | X | | X | monshaye37@gmail.com; 1444 Bell Trace Dr., Antioch, TN 37013 |
| Anthony Noel, Carolina Martin, Employer's attorneys | | | X | Tony.noel@leitnerfirm.com; Carolina.martin@leitnerfirm.com |
| Compliance Unit | | | X | WCCompliance.program@tn.gov |

Penny Shrum, Court Clerk
Wc.courtclerk@tn.gov